368 So.2d 1214 (1979)
Dennis J. HAYES, Jr. and Inland Marine Salvage Company, Inc.
v.
ALLSTATE INSURANCE COMPANY and Starr Steckler.
No. 9821.
Court of Appeal of Louisiana, Fourth Circuit.
March 7, 1979.
*1215 Satterlee, Mestayer & Freeman, A. D. Freeman and Charlotte A. Hayes, New Orleans, for plaintiffs-appellants.
Drury, Lozes & Curry, Robert P. Baumgartner, New Orleans, for defendants-appellees.
Before REDMANN, LEMMON and GARRISON, JJ.
LEMMON, Judge.
This appeal by plaintiffs, the driver and the corporate owner of the car involved in an automobile accident with defendant's insured, questions the adequacy of the amount awarded by the jury.
In the May 7,1976 rear-end collision Dennis Hayes was driving a car owned by Inland Marine Salvage Company, Inc., a corporation whose stock was owned by Hayes and his family. Hayes did not experience pain that day, but had headaches and neck discomfort the following day. However, he was primarily concerned about the effect of the trauma on the partial paralysis he had sustained in 1971 when a bullet became lodged in the occipital area of his skull and was left in place after the doctors determined it was not causing any progressive neurological damage.
About five or six days after the accident Hayes consulted the neurosurgeon who had performed the 1971 craniotomy. The doctor found cervical tenderness and restriction of neck motion and diagnosed a mild to moderate cervical strain, but found no evidence of additional brain damage and reassured Hayes that his physical condition had not been worsened by the accident.
Hayes did not consult the neurosurgeon again, but in August at his annual examination at the governmental facility where he had recuperated following the 1971 incident he reported the accident and requested comparative X-rays to insure that the bullet had not been moved by the trauma.
Hayes described the neck pain as "bad" for the first few days, but could not say how long the pain had persisted. He testified that his primary concern was over possible aggravation to his pre-existing condition.
The car owned by Inland was repaired at a cost of $2,778.00, but the repairs were not completed until August 9 because certain parts were lost in shipment, causing about a six-week delay until the parts were traced and found. In September additional repairs were performed at a cost of $103.61, and the body repair expert testified that this damage was also attributable to the accident.
An adjuster employed by defendant insurer had inspected the car immediately after the accident and had estimated the cost of repair at $2,045.78, but he emphasized in testimony that his estimate did not include hidden damage.[1]
Inland additionally claimed a $12.60 expenditure on August 18 for a check of the alignment (not by the repair expert but by another repairman who did not testify); an expenditure for repair of the water pump in Florida in August and car rental during that repair (without any proof that this *1216 repair was accident related); and a $375.49 expenditure for car rental in California on June 19. As to the latest item Hayes testified that he had intended to use the car for the combined business-pleasure trip, but when the repairs were not completed he flew there and rented a car for use in California and for the trip back to Louisiana.
The jury awarded the lump sum of $3,000.00 in answering the following special interrogatory:
"How much personal injury and property damage did plaintiff suffer?
"$3000.00
"together with interest and cost from date of judicial demand."
On appeal plaintiffs first complain that the jury failed to differentiate the different damage sustained by each plaintiff.
Not only did Hayes and his family own the corporation in whose name title to the car was vested, but also he referred in his testimony to the vehicle as "my car". Under these circumstances, although plaintiffs could have obtained specificity in the interrogatory prior to submission to the jury (or perhaps even after submission and before the jury was discharged), plaintiff cannot now complain that the jury treated the two plaintiffs as one and rendered a lump sum verdict.
Accordingly, the amount of the award will be reviewed as if Hayes were the owner of the car and had been the proper party for the award of property damage.
As to the adequacy of the lump sum awarded for personal injuries and property damage, the cervical injury was a minor one of short duration. Furthermore, whatever anxiety Hayes experienced in worry over his prior condition was not so great as to prompt him to seek medical attention until almost a week after the accident, and as soon as he did so he was reassured that no additional damage had been done.
Therefore, the jury on this record could reasonably have awarded only a modest sum for personal injuries.
For property damage the sum of $2,881.61 was actually paid to the repairman, and there was no substantial contradiction to plaintiffs' evidence that the charges were reasonable and were necessitated by the accident.[2] However, the jury could reasonably have rejected all of plaintiffs' other claims relating to property damage.
There was no evidence (not even by plaintiff) of the necessity of an alignment check immediately after completion of repairs by the repairman who regularly serviced the car. There was no evidence (not even by inference) that the water pump repair in Florida over three months after the accident was necessitated by the accident. A closer question, however, is presented as to the claim for loss of use, as measured by the charge for the two-week rental in California.
Loss of use is compensable during the period of time required for repair of the vehicle in the exercise of proper diligence. Carimi v. Saia, 301 So.2d 895 (La. App. 4th Cir. 1974). Here, the charge for which reimbursement is claimed was incurred six weeks after the accident, at which time repairs would have been completed if the parts had not been lost in shipment. Since neither the repairman's testimony nor any other evidence explained why a six-week delay was necessitated by the lost shipment, or why the parts could not have been obtained by immediate reorder or by immediate tracing, the jury could reasonably have concluded plaintiffs failed to prove the charge was incurred within the time reasonably required for completion of repairs in the exercise of proper diligence.
The award by general verdict, although modest, was within the much discretion accorded by C.C. art. 1934(3).
AFFIRMED.
NOTES
[1] Indeed, because of the probability of more extensive damage, the adjuster declared the car (which he valued at $2,805.00) a constructive total loss.
[2] There was no cross examination of the repairman as to his estimate. Although the insurer's adjuster's estimate was an implicit contradiction, it was of little probative value because of the reservation as to hidden damages.